J-A23024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RONALD JAMES :
:
Appellant : No. 1329 EDA 2019

Appeal from the Judgment of Sentence Entered April 5, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007900-2012

BEFORE:   KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED:  MARCH 31, 2021**

Appellant Ronald James appeals from the judgment of sentence imposed following violation-of-probation proceedings.  Appellant asserts that the trial court erred in revoking his probation based on hearsay police reports.  Additionally, Appellant requests that this Court vacate the judgment of sentence without remanding for further proceedings.  The Commonwealth and the trial court agree that the revocation decision improperly relied on hearsay police reports but assert that a remand for a new hearing is proper.  For the reasons that follow, we vacate the judgment of sentence and remand this matter for further proceedings.

The trial court summarized the procedural background of this appeal as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

Following his January 31, 2014, conviction [for possession with intent to deliver a controlled substance (PWID)], Appellant . . . was sentenced on March 28, 2014, to concurrent periods of state incarceration [of one-and-one-half to two years], followed by four years['] probation on charges of possession of a controlled substance with intent to deliver and conspiracy.

On August 24, 2017, Appellant was found in violation of his probation and sentenced to new concurrent terms of four years['] probation, along with employment and drug treatment conditions.

On December 5, 2018, Appellant was arrested and charged with possession of a controlled substance with intent to deliver and possession of a controlled substance, arising from events occurring on November 19, 2018 (CP-51-CR-0000607-2019) [(the new charges)].

A violation hearing was held on April 5, 2019, at which time Appellant was found in violation of his probation,[1] and sentenced to concurrent terms of [one to two years'] state incarceration, followed by [two years'] reporting probation.

A motion for reconsideration was filed on April 17, 2019. That motion was denied on May 2, 2019.

A timely notice of appeal was filed on May 6, 2019.[2]

On July 29, 2019, an order issued directing the filing of a statement pursuant to Pa.R.A.P. 192[5](b). On August 8, 2019, Appellant filed a statement pursuant to Pa.R.A.P. 192[5](b).

_____

[1] As discussed below, the **Gagnon II** summary listed "possible direct violations" based on the new charges. **See Gagnon II** Summary, 3/28/18, at 1; **see also Gagnon v. Scarpelli**, 411 U.S. 778, (1973). Appellant objected to the trial court proceeding with the **Gagnon II** hearing based on alleged discovery violations and while trial on the new charges were pending. Appellant also objected to the trial court's consideration of hearsay documents and reports. **See** N.T., 4/5/19, at 4-11, 19.

[2] The thirtieth day after resentencing for Appellant's violation of probation fell on a Sunday, and Appellant filed his notice of appeal on the following Monday. **See** 1 Pa.C.S. § 1908.

On October 2, 2019, Appellant filed a supplemental Rule 1925(b) statement noting the September 20, 2019, dismissal of [the new charges].

Trial Ct. Op., 10/9/19, at 1-2 (footnote omitted).

Appellant presents the following questions for review:

1. Was there not insufficient evidence to sustain a revocation, and were not due process rights violated, where only inadmissible hearsay police reports were introduced?

2. Was it not an abuse of discretion and a violation of due process rights to sustain a revocation of probation in this case based on alleged new criminal conduct where inadequate discovery had been provided before the [**Commonwealth v. Kates**, 305 A.2d 701 (Pa. 1973) (**Daisey Kates**)] hearing, only hearsay evidence was introduced, and the underlying new criminal charges were dismissed after multiple continuances because the Commonwealth failed to provide complete discovery?

Appellant's Brief at 2 (some capitalization omitted).

We summarize Appellant's arguments together because they are related to his claims that the trial court erred in relying on hearsay reports and that a remand is improper. First, Appellant asserts that the trial court improperly considered hearsay evidence without finding good cause. *Id.* at 7. Appellant contends that "[b]ecause there was no admissible evidence of probative value to sustain the burden to show by a preponderance of the evidence that [he] violated his probation, this Court should reverse the revocation of probation." *Id.* at 8.

Second, Appellant contends that "[i]t would be fundamentally unfair for [him] to be subject to a new hearing where there was no admissible probative evidence offered to sustain the burden of proof at the revocation hearing in

violation of well established law." ***Id.*** at 8 n.2. In support, Appellant cites

***Commonwealth v. Foster***, 214 A.3d at 1240 (Pa. 2019), ***In the Interest***

***of Davis***, 546 A.2d 1149 (Pa. Super. 1998) (*en banc*), and ***Commonwealth***

***v. Royster***, 572 A.2d 683 (Pa. 1990). ***Id.*** Further, Appellant claims that a

remand is improper because the trial court also abused its discretion when

holding a ***Daisey Kates*** hearing. ***Id.*** at 11. Appellant emphasizes the trial

court's reliance on hearsay evidence and disregard for his claims that the

Commonwealth failed to provide him with complete discovery. ***Id.*** at 10-11.

Appellant further notes that the new charges did not result in a conviction

because the Commonwealth failed to provide adequate discovery and that

matter was dismissed. ***Id.*** at 11-12. From this, Appellant asserts that "the

[***Daisey Kates***] revocation here is void" and that the order revoking his

probation should be vacated without a remand. ***Id.*** at 13.

Neither the Commonwealth nor the trial court dispute the error in

revoking Appellant's probation based on police reports alone.[3]

---

[3] Although the trial court asserted that it erred in admitting hearsay without a finding of good cause, it concluded that "[t]he matter should be remanded for a new violation hearing" without any citation to legal authority. Trial Ct. Op. at 3. In addressing Appellant's claim that the subsequent dismissal of the new charges did not preclude further proceedings, the trial court noted that there was no record of the disposition of the new charges. ***Id.*** at 4 n. 3. In any event, the trial court noted that "the termination of the case [on the new charges] based on incomplete discovery does not constitute the sort of disposition that would create a collateral estoppel bar to considering the conduct for the purpose of probation violation." ***Id.*** at 4 (***citing Commonwealth v. Brown***, 469 A.2d 1371 (Pa. 1983)).

Commonwealth's Brief at 7; Trial Ct. Op. at 3. The Commonwealth states that it "shares the preferences of this Court and the Supreme Court to defer revocation until after trial" on a probationer's new charges.[4] Commonwealth's Brief at 4, 10-12. Nevertheless, the Commonwealth asserts that the cases and principles cited by Appellant do not support his argument that a remand is improper. *Id.* at 4, 8, 12-13. The Commonwealth emphasizes that the trial court's error was evidentiary in nature, the dismissal of the new charges by *nolle prosequi* does not preclude further proceedings on the violation of probation, and that a remand for a new hearing would not conflict with its own policies or the principles weighing against "pretrial revocations." *Id.* at 12-14.

Our review of a judgment of sentence imposed upon a violation of probation "is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial to consider the same sentencing alternatives that it had at the time of the initial sentencing." ***Commonwealth v. Giliam***, 233 A.3d 863, 866 (Pa. Super. 2020) (citation omitted and some formatting altered).

---

[4] The Office of the District Attorney of Philadelphia, Lawrence S. Krasner, Esq., has expressed similar policy arguments and reservations in cases concerning ***Daisey Kates***. ***Cf. Commonwealth v. Major***, 241 A.3d 469, 613 EDA 2018, 2020 WL 6305915, at \*7, n.9 (Pa. Super. filed Oct. 28, 2020) (unpublished mem.).

This Court has summarized the procedures and rights afforded to a probationer as follows:

> When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a ***Gagnon I*** hearing, that probable cause exists to believe that a violation has been committed. . . .
>
> The ***Gagnon II*** hearing entails two decisions: first, a consideration of whether the facts determined warrant revocation. The first step in a ***Gagnon II*** revocation decision . . . involves a wholly retrospective factual question: whether the parolee [or probationer] has in fact acted in violation of one or more conditions of his parole or probation. It is this fact that must be demonstrated by evidence containing probative value. Only if it is determined that the parolee or probationer did violate the conditions does the second question arise: should the parolee or probationer be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation? Thus, the ***Gagnon II*** hearing is more complete than the ***Gagnon I*** hearing in affording the probationer additional due process safeguards, specifically: (a) written notice of the claimed violations of probation or parole; (b) disclosure to the probationer or parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking probation or parole.
>
> Further, we note that there is a lesser burden of proof in a ***Gagnon II*** hearing than in a criminal trial . . . . Thus, the Commonwealth need only prove a violation of probation by a preponderance of the evidence.

*Commonwealth v. Allshouse*, 969 A.2d 1236, 1240-41 (Pa. Super. 2009) (citations omitted and some formatting altered).

In *Allshouse*, the Commonwealth alleged that the probationer committed technical violations of his probation. *Id.* at 1238. At the *Gagnon II* hearing, the Commonwealth had a probation officer read various witness statements into the record to demonstrate that the probation violated a no-contact order and failed to maintain good behavior. *Id.* at 1239. The probation officer was not sworn in to testify, and the Commonwealth did not present any testimony from the witnesses. *Id.* The probationer conceded that he failed to comply with a probation term that he pay court costs, but denied the violations of the no-contact order and failing to maintain good behavior. *Id.* The trial court found the probationer in technical violation, revoked his probation, and resentenced him. *Id.*

On appeal, the *Allshouse* Court concluded that "all evidence in support of [the violations of the no-contact order and good behavior conditions] was hearsay" that the trial court admitted into evidence without a finding of good cause. *Id.* at 1243. Moreover, the Court noted that there was no competent evidence to rebut the probationer's accounts and denials of the alleged violations. Therefore, this Court determined that the Commonwealth failed to establish a violation of probation warranting revocation, vacated the judgment of sentence, and remanded the matter for a new hearing. *Id.* at 1243-44.

Instantly, we agree with the trial court, Appellant, and the Commonwealth that the trial court erred in finding that Appellant violated his

probation. *See* Trial Ct. Op. at 3; Appellant's Brief at 7; Commonwealth's Brief at 7. Here, as in *Allshouse*, the trial court revoked Appellant's probation based solely on a review of hearsay reports and documents, which the trial court considered without a finding of good cause. *Allshouse*, 969 A.2d at 1243-44. Accordingly, we must vacate the judgment of sentence. *See id.* at 1244.

We next consider Appellant's request to vacate without remanding for further proceedings. In *Commonwealth v. Mullins*, 918 A.2d 82 (Pa. 2007), the trial court revoked probation based on its review of a probation officer's hearing summary sheet, which the officer "adopted as his testimony." *Mullins*, 918 A.2d at 83. This Court concluded that the trial court erred in revoking probation based on a hearing summary sheet that was entered into evidence and where no testimony substantiated the allegations in the report. *Id.* at 83-84. Notably, this Court vacated the judgment of sentence and did not remand for a new hearing. *Id.* Our Supreme Court granted allowance of appeal to consider whether this Court "exceeded its authority" by vacating the sentence without remanding for a new violation-of-probation hearing. *Id.* at 84.

The *Mullins* Court concluded that this Court erred by failing to remand, noting:

> The potential for a [violation-of-probation] hearing is an integral part of the original conditional sentence, the purpose of which is to establish to the satisfaction of the court that granted probation, that the individual's conduct warrants continuing him as a probationer. Even where the [violation-of-probation] hearing

record is insufficient to sustain revocation of probation, this purpose should not be frustrated—the court that granted probation should not be precluded from determining whether probation remains the proper course only because the Commonwealth failed to include certain formalities in the record. Probation is given by grace, not by right. To hold the Double Jeopardy Clause is somehow implicated at a [violation-of-probation] hearing would elevate something of grace to the status of constitutional dimension.

*Id.* at 86 (citation omitted).

In contrast, in **Foster**, our Supreme Court reversed a violation-of-probation sentence and rejected the Commonwealth's argument that the matter should be remanded for a new hearing.[5] **Foster**, 214 A.3d at 1252. Our Supreme Court distinguished **Mullins**, explaining:

Unlike **Mullins**, the case at bar does not involve a procedural anomaly or the disregard of an evidentiary formality. This case simply involves the question of whether the evidence and information presented before the [violation-of-probation] court supports a finding that [the probationer] violated his probation. The sole evidence presented by the Commonwealth at the [violation-of-probation] hearing was the photographs. The photographs depicted alleged marijuana, white pills and an alleged gun, the intended implication being that [the probationer] was in possession of contraband. The Commonwealth made extensive argument before the [violation-of-probation] court that the items in the photographs belonged to [the probationer], that he took the pictures of these items (thus possessing them), and that he thus committed a crime. The Commonwealth never contended that [the probationer] violated a specific condition of his probation; in fact, it expressly concedes that he did not.

_____

[5] The **Foster** Court did remand that case to the trial court. However, the remand was for a calculation of sentencing credit for the time the probationer spent in custody for the probation violation the Court reversed. **Foster**, 214 A.3d at 1254.

- 9 -

> The [violation-of-probation] court heard the argument and considered the evidence presented, making findings of fact based on its assessment of that evidence. As stated hereinabove, the [violation-of-probation] court found, based on the evidence presented, that [the probationer] violated probation because in the court's view, he was not taking his probation seriously and his behavior of posting the pictures on his social media accounts (which he admitted) was antisocial and defiant, concluding on that basis that probation was not an effective vehicle for his rehabilitation. Importantly, the [violation-of-probation] was specifically asked to find that [the probationer] committed a crime, but it did not.
>
> The Commonwealth does not seek a new evidentiary hearing, it simply advocates for the [violation-of-probation] court to have "an opportunity to make factual findings under [the] proper legal standard." As our discussion hereinabove reflects, the legal standard pursuant to which the [violation-of-probation] court was required to make its determination is clear, unambiguous, and has always been the law. Moreover, as discussed, *Mullins* does not stand for the proposition that remand is required anytime the Commonwealth disagrees with the [violation-of-probation] court's findings. The failure to make the only finding of fact advanced by the Commonwealth is a clear rejection of that fact.

*Foster*, 214 A.3d at 1253 (citations and footnotes omitted).

Instantly, we conclude that the error identified by Appellant is closer to the procedural defect in *Mullins* than the findings in *Foster*.[6] *Compare Foster*, 214 A.3d at 1253, *with Mullins*, 918 A.2d 82. Here, as in *Mullins*, the error arose from the use of reports and documents to find a violation of

---

[6] We note Appellant's reliance on *Davis*. However, *Davis*, which was a juvenile probation matter, was decided before *Mullins* and *Foster* and had no discussion of its decision to vacate the revocation of probation without remanding the matter. Therefore, the more specific discussions of this Court's authority to remand or withhold remand in *Mullins* and *Foster* is controlling.

probation.[7] Moreover, the allegations in the police reports, if proven through competent evidence at a proper hearing, could establish that Appellant committed new offenses. Unlike **Foster**, the Commonwealth here seeks a new evidentiary hearing to remedy the procedural error. The trial court's findings also do not evince a clear rejection of the Commonwealth's theory for revoking Appellant's probation. Therefore, we remained bound by the instruction in **Mullins** that this matter must be remanded for further proceedings.

_____

[7] Although Appellant focuses on the trial court's reliance on the reports and documents and possible discovery violations, the record reveals other irregularities that occurred at the hearing. Specifically, the **Gagnon II** summary appears to charge only a potential direct violation of probation based on Appellant's arrest for delivery of cocaine. **See Gagnon II** Summary, 3/28/18, at 3-4 & Exs. At the April 5, 2019 hearing, it appears that the Commonwealth intended to proceed based solely on the report and documents as none of the parties, nor the trial court, referred to the presence of any witness except for Appellant. **See** N.T., 4/5/19, at 3-5, 18-19.

At the hearing, the Commonwealth set forth no arguments regarding the basis for the revocation. **Id.** at 18-19. After accepting the reports and documents over Appellant's objections regarding discovery matters and to hearsay, the trial court stated that it found Appellant "in technical violation" of the terms of his probation, although the Commonwealth presented no evidence of the terms of Appellant's probation. **See id.** 18-20. **But see** Commonwealth's Brief at 2 (indicating that the trial court found Appellant in violation of probation based solely on his alleged commission of new crimes).

We acknowledge these irregularities may push the instant case closer to the situation discussed in **Foster** and add support to Appellant's general argument that it would be fundamentally unfair to remand this matter to allow the Commonwealth a "second bite at the apple." **See** Appellant's Brief at 8, n.2. However, Appellant does not refer to these apparent irregularities in his brief, nor does he use them to support his position not to remand this matter for further proceedings.

We also acknowledge Appellant's arguments based on **Daisey Kates** and the principles favoring the deferral of a revocation hearing until after trial on new charges. **See Giliam**, 233 A.3d at 869 (noting that "it may be 'preferable to defer [ ] hearing until after the trial, thus avoiding the possibly unjust result of revoking probation, only to find later that the probationer has been acquitted of the charges that prompted the revocation hearing'" (citation omitted)). In sum, **Giliam** holds that a violation-of-probation sentence for a direct violation "cannot stand" when a probationer is subsequently acquitted of new charges. **See id.**; **see also Royster**, 572 A.2d at 686 (vacating a violation-of-probation sentence for a direct violation based on the trial court's subsequent grant of arrest of judgment following trial on new charges). However, here, even accepting Appellant's argument that the Commonwealth was responsible for the dismissal of the new charges based on delays in discovery, the dismissal of the new charges does not have the same preclusive force as an acquittal. Accordingly, we conclude that Appellant's contention that "the [**Daisey Kates**] revocation here is void" lacks merit and does not bar remand of this matter for further proceedings.

For these reasons, we conclude that the trial court erred in revoking Appellant's probation based on reports and documents alone. We further conclude that despite the procedural errors in this case, remand for further proceedings is appropriate.[8] **See Mullins**, 918 A.2d at 86.

---

[8] Nothing in our decision precludes Appellant from litigating his discovery issues in the trial court following remand.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/21